UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GARY CHARLTON and TRINA CHARLTON,<br><br>        Plaintiffs,<br><br>        v.<br><br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | No. 2:14-cv-00349-SAB<br><br>**PRELIMINARY INJUNCTION ORDER** |

Before the Court is Plaintiffs' Motion for Temporary Restraining Order, ECF No. 5. A hearing on the motion was held on January 21, 2015. Plaintiff Gary Charlton participated *pro se* and Defendant was represented by Arthur A. Simpson. This order memorializes the Court's oral ruling.

On October 9, 2014, Plaintiffs Gary Charlton and Trina Charlton filed a complaint in Spokane County Superior Court, alleging violations of the Washington State Consumer Protection Act, Wrongful Foreclosure, Fraud, Misrepresentation and Deceit and Unfair Business Practices. An Amended Complaint was filed on October 22, 2014. Count 1 alleges violation of the Washington Consumer Protection Act; Count 2 alleges violation of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5481 *et seq.*, with respect to loan servicing; Count 3 alleges violation of the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5481 *et seq.*, with respect to foreclosure processing; Count 4

**PRELIMINARY INJUNCTION ORDER ~ 1**

alleges dual tracking; Count 5 alleges negligence; and Count 6 asks for injunctive relief for violation of the Consumer Protection Act. ECF No. 3-2 at 72-81.

**A.    Background Facts**

The following facts are taken from Plaintiffs' Amended Complaint and subsequent briefing. In 1998, Plaintiffs built a home in Nine Mile Falls, Washington. In February, 2005, Plaintiff refinanced the mortgage with Wells Fargo. Plaintiffs were required to make payments in the amount of $2,182.41. Wells Fargo sold the loan to Freddie Mac and became the loan service provider for Freddie Mac.

Plaintiffs made timely payments between March 1, 2005 and March 1, 2012. In August, 2011, Plaintiffs contacted Wells Fargo and asked about a loan modification due to unemployment issues. Plaintiffs were referred to Wells Fargo Home Affordable Refinance Program (HARP). Plaintiffs contacted the Wells Fargo HARP department and were told that a HARP package would be sent to them. According to Plaintiffs, the HARP package was not received. Between November, 2011 until October, 2014 when Plaintiffs filed the instant action, Plaintiffs continually attempted to contact Wells Fargo to obtain a loan modification. According to Plaintiffs, Wells Fargo failed to respond or return their phone calls, or make a decision on their pending applications.

On December 30, 2013, Plaintiffs received a call from Jose Gonzales, a Wells Fargo foreclosure specialist. He indicated that a temporary loan modification was approved and was sent to Plaintiffs in November, 2013. He instructed that Plaintiffs needed to sign it and submit a payment of $1166.04 before the end of the day to keep the approved temporary loan modification from expiring. Plaintiffs indicated to Mr. Gonzales that no paperwork was received. Mr. Gonzales directed them to Wells Fargo website and instructed them to fill out a generic online application, email it to him, and submit a payment of $1166.04. Plaintiffs completed the online application, and attempted to make the payment of

**PRELIMINARY INJUNCTION ORDER** ~ 2

$1166.04 at a Wells Fargo branch. Employees at the branch were unable to accept the payment because Plaintiffs' account was locked. The manager of the branch unsuccessfully tried on multiple times to contact Mr. Gonzalez as well as the Wells Fargo modification department to try to resolve the issue of accepting Plaintiffs' payment, but the calls went directly to voice mail.

The next day, Plaintiffs spoke with Mr. Gonzales. He explained that because no timely payment was made, the foreclosure was to proceed, and there was nothing he could do at the point. Currently, the foreclosure sale is scheduled for January 23, 2015.

**B.  Motion Standard**

Pursuant to Fed. R. Civ. P. 65, a court may issue a temporary restraining order upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of such an order is solely to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters,* 415 U.S. 423, 439 (1974).

Here, although Plaintiffs are seeking a temporary restraining order, Defendant received notice of the motion, and thus, the issue is whether the Court should grant a preliminary injunction. Fed. R. Civ. P. 65(a)(1). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co, Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council,Inc.,* 555 U.S. 7, 20 (2008).

**PRELIMINARY INJUNCTION ORDER** ~ 3

The Ninth Circuit employs a "sliding scale" approach to *Winter's* four-element test. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *Id.* at 1131. Identified as the "serious questions" test, the Circuit has held that a preliminary injunction may issue if the plaintiff raises "serious questions going to the merits" and demonstrates that "the balance of hardship tips sharply towards the plaintiff's favor," but only so long as the plaintiff also demonstrates that irreparable harm is likely—not just possible—and that the injunction is in the public interest. *Id.* (internal quotation marks omitted). Finally, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter,* 555 U.S. at 24. Thus, a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

**C.  Plaintiff's Claims**

In their Complaint, Plaintiffs assert a number of claims, including a claim for dual tracking and violations of the Consumer Protection Act.

The Consumer Protection Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020. To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37 (2009). The first element may be predicated upon (1) a per se violation of a statute; (2) an act or practice that has the capacity to deceive substantial portions of the public; or (3) an unfair or deceptive act or practice not regulated by statute but in violation of public interest. *Klem v. Wash. Mut. Bank*, 176 Wash.2d 771 (2013).

**PRELIMINARY INJUNCTION ORDER** ~ 4

In 2011, the Washington legislature passed the Foreclosure Fairness Act (FFA). The purpose of the Act, in part, was to create a framework for homeowners and beneficiaries to communicate with each other to reach a resolution and avoid foreclosure whenever possible; and provide a process for foreclosure mediation when a housing counselor or attorney determines that mediation is appropriate. 2011 Wash. Leg. Serv. Ch. 58, § 1. The Act amends the Deed of Trust Act, and establishes a mediation program that requires lenders to mediate in good faith. It also changed the requirements for pre-foreclosure notice, Wash. Rev. Code § 61.24.030, .031, .040, and allowed for recovery of damages for violations of the CPA, § 61.24.135. Specifically, the FFA states:

> It is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) violate the duty of good faith under RCW 61.24.163; (b) fail to comply with the requirements of RCW 61.24.174; or (c) fail to initiate contact with a borrower and exercise due diligence as required under RCW 61.24.031.

§ 61.24.135.

Plaintiffs' allegations contained in the complaint, if true, would arguably support a claim under the Consumer Protection Act and the Foreclosure Fairness Act. For example, Plaintiffs' allegations include numerous instances where Defendant indicated to them that it had sent documents to Plaintiffs, but Plaintiffs never received the documents. Defendant then would rely on the lack of response to continue with the foreclosure proceedings. Notably, in this case, Defendant filed a Notice of a December 18, 2014 letter that was purportedly sent to Plaintiffs. ECF No. 12. Plaintiffs filed a response stating they had not received the letter. ECF No. 16. At the hearing, Defendant's counsel clarified that the letter was never sent, and indeed, Plaintiffs were correct when they stated they never received the letter.

**PRELIMINARY INJUNCTION ORDER ~ 5**

**D.    Analysis**

Here, the Court exercises its equitable powers pursuant to Fed. R. Civ. 65, to grant Plaintiffs' motion. The Court finds that Plaintiffs will suffer irreparable harm if they lose their home and are forced to relocate. A foreclosure sale will leave Plaintiffs without the home that they have built and shared for over a decade. There is no doubt that foreclosing on the deed of trust would cause emotional and financial strain to Plaintiffs. Additionally, the balance of equities tip in Plaintiffs' favor and an injunction is in the public interest. Because Plaintiffs raise "serious questions" whether the FFA and the CPA have been violated, it is appropriate to enjoin the scheduled trustee sale.

Although Plaintiffs have filed two previous lawsuits, one filed in federal court and one filed in state court, it does not appear that either case included CPA or FFA claims. Consequently, collateral estoppel or *res judicata* does not apply.

**E.    Payment to Clerk of Court**

The Court will require Plaintiffs to pay to the Clerk of Court the sum of $1166.04 every 30 days, which, according to Plaintiffs, is the amount that was due under the proposed loan modification presented in November, 2013.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Plaintiffs' Motion for Temporary Restraining Order, ECF No. 5, is **GRANTED**. The trustee sale scheduled for January 23, 2015 is enjoined until further notice from the Court.

2.    Plaintiffs' Motion for Entry of Default, ECF No. 11, is **DENIED**.

3.    Plaintiffs' Motion to Strike, ECF No. 19, is **DENIED**.

4.    Plaintiffs' Motion for Default Judgment, ECF No. 20, is **DENIED**.

5.    **Within 2 weeks** from the date of this Order, Plaintiffs shall deposit $1166.04 with the Clerk of the Court, and shall **continue** to pay this amount to the Clerk of Court **every 30 days** after the first deposit.

6.    On or before **February 5, 2015**, Defendant shall file its Answer.

**PRELIMINARY INJUNCTION ORDER ~ 6**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 22nd day of January, 2015.



Stanley A. Bastian
United States District Judge

**PRELIMINARY INJUNCTION ORDER** ~ 7